IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CR-322-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| REGINALD LOVE BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

On April 28, 2011, a jury convicted Reginald Love Brown ("Brown" or "defendant") of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(b)(1) (count one), interference with commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2 (count two), and using and carrying a firearm in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c) and 2 (count three). The statutory maximum for counts one and two is twenty years' imprisonment. As for count three, the mandatory minimum is not less than ten years, and the statutory maximum is life imprisonment. The sentence on count three must be consecutive to the sentences on counts one and two.

On August 16, 2011, the court held the sentencing hearing. The advisory guideline range is 360 months to life. After considering all of the evidence presented and the arguments of counsel, the court considered all of the factors under 18 U.S.C. § 3553(a), and sentenced Brown to 240 months' imprisonment on count one, 240 months' imprisonment on count two, and life on count three. The sentence on count two shall run consecutively to the sentence on count one, and the sentence on count three shall run consecutively to the sentence on count two. The court enters this order to explain Brown's sentence.

I.

The court has reviewed the Revised Presentence Investigation Report ("PSR") and adopts the facts stated in the PSR. See Fed. R. Crim. P. 32(i)(3). On April 28, 2011, a jury convicted Brown of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951 (count one), interference with commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2 (count two), and possession of firearms during and in relation to a crime of violence (and aiding and abetting) in violation of 18 U.S.C. §§ 924(c) and 2 (count three). PSR ¶¶ 1–3, 5.

On May 20, 2008, the Henderson Police Department responded to a report of a home invasion and robbery in progress at a residence on Alexander Avenue. Id. ¶ 12. Officers witnessed an individual, later identified as Brown, jump from a window and flee the scene. Id. When officers entered the residence, they found multiple individuals lying on the floor, three with their hands bound with duct tape and another who had been shot in the chest. Id. Officers found a female in the hallway who was not bound, and located a loaded firearm on the floor of the living room. Id. Victims informed officers that three of the men were actually robbers who had thrown down their guns and pretended to be victims. Id. These three individuals were identified as Orlando Ramon Harris, Frederick Lamarca Hunt, and James Alvin Fisher. Id. Brown entered first, shot one of the victims in the chest, and ordered the rest to the floor. Id. Harris, Hunt, and Fisher then entered with their faces covered while brandishing firearms. Id. The quartet took jewelry, money, and drugs from the victims and bound them with duct tape. Id. Another victim in the kitchen was ordered to the ground and one of the robbers placed a gun to the victim's head. Id. Another victim was repeatedly hit with a firearm while one of the robbers asked where the drugs were located. Id. The robbers threatened to drown the gunshot victim in the bathtub as they continued to ask where the drugs and money were located. Id.

2

Officers searched the home and found that the residence had been ransacked. Id. ¶ 13. Officers found duct tape, bandanas, and latex gloves throughout the home, and a loaded firearm behind a television in the living room. Id. Officers also found a book bag that Brown discarded as he escaped from the scene and a second firearm in the backyard. Id. The book bag contained a ski mask, binoculars, a black hood, gloves, zip ties, duct tape, and a large knife. Id. Officers searched Hunt and found a victim's wallet which contained $229 and 4.8 grams of cocaine base. Id. Officers performed gunshot residue tests on Harris, Hunt, and Fisher, and each tested positive. Id. Fisher, Harris, and Hunt all identified Brown as part of the conspiracy and the robbery and identified Brown as the "shooter." See id. ¶¶ 14–16.

Ernest Augustus Hawkins, the central figure in Henderson, North Carolina's E-40 gang, orchestrated the conspiracy and robbery. Id. ¶¶ 14–16, 18. The E-40 gang was formed after the murder of a local drug dealer, and took its name from Hawkins's address. Id. ¶ 18. After other gang leaders died or were imprisoned, Hawkins emerged as the de facto leader of the gang. Id. Fisher, Harris, and Hunt reported to Hawkins's house the day of the robbery. Id. ¶¶ 14–16. Hawkins introduced them to Brown, identifying him as "one of his men," and instructed them to do what Brown said. Id. Hawkins gave the participants latex gloves, instructed the men to take drugs, money, and anything of value, and return to his residence afterwards. Id. Finally, Hawkins indicated he had "more stuff" for the men to do after they returned. Id. ¶ 16.[1]

---

[1] On December 14, 2010, Hawkins pleaded guilty to one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(b)(1). United States v. Hawkins, No. 5:10-CR-322-D, [D.E. 44] (E.D.N.C. Dec. 14, 2010). Hawkins did not testify at Brown's April 2011 trial. By that time, Hawkins had buyer's remorse concerning his plea agreement and had filed a motion to withdraw his guilty plea. Id., [D.E. 61]. On June 21, 2011, the court sentenced Hawkins to the statutory maximum of 240 months' imprisonment. Id., [D.E. 127].

3

At Brown's trial, Hunt testified that after his May 2008 arrest he was incarcerated in state prison with Brown. PSR ¶ 19. Brown was serving 31 months for stabbing a man with a knife. Id. ¶¶ 19, 37. Brown approached Hunt and demanded that he sign a false affidavit, which stated that Brown was not involved with the robbery. Id. ¶ 19. Brown told Hunt that Brown knew Hunt was cooperating, and that he would tell "everyone" of Hunt's cooperation unless he signed the affidavit. Id. Hunt testified that he signed the affidavit that Brown provided to him only because of the possible violence against him if his cooperation became known in prison. Id.

The statutory penalty for conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951 (count one) and interfering with commerce by robbery in violation of 18 U.S.C. § 1951 (count two) is a term of imprisonment of not more than 20 years and a fine of not more than $250,000. 18 U.S.C. §§ 1951(a), 3571(b)(3). The statutory penalty for discharge of a firearm during and in relation to a crime of violence (and aiding and abetting others) in violation of 18 U.S.C. § 924(c)(1)(A)(iii) is not less than 10 years nor more than life, consecutive to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii).

The base offense level for violating 18 U.S.C. § 1951 is 20. PSR ¶ 60; see U.S.S.G. § 2B3.1(a). The offense level is increased by 4 levels because a victim sustained serious bodily injury, PSR ¶ 62; see U.S.S.G. § 2B3.1(b)(3)(B), 2 additional levels because victims were restrained, PSR ¶ 63; see U.S.S.G. § 2B3.1(b)(4)(B), 1 additional level for the theft of a controlled substance, PSR ¶ 64; see U.S.S.G. § 2B3.1(b)(6), and 2 levels for obstruction of justice. PSR ¶ 67; U.S.S.G. § 3C1.1. However, the PSR classifies Brown as a career offender, mandating a total offense level of 32. U.S.S.G. § 4B1.1(b)(C); PSR ¶¶ 25–26, 29–30, 32, 69.

Brown's criminal history demonstrates a disturbing dedication to a violent, criminal lifestyle. See PSR ¶¶ 23–37. He has convictions in four states, multiple convictions for being a felon in

possession of a firearm, has shot two people and stabbed a third, and proven beyond doubt that he will continue to terrorize society if released. Id. His criminal convictions result in 23 points. Id. ¶ 39; cf. U.S.S.G. § 5A (sent'g tbl.) (13 or more criminal history points yield a criminal history category VI). Because Brown was on probation during the instant offense, 2 additional points are added. Id. ¶ 40. Thus, Brown's criminal history point total is 25 and his criminal history category is VI. Id. ¶ 41. The 924(c) career offender table mandates a guideline range of 360 months' to life imprisonment. See U.S.S.G. § 4B1.1(c)(3); PSR ¶ 75.

Brown objects to his status as a career offender. See PSR add. However, Brown's 1995 convictions for possession of a controlled substance with intent to distribute within 1,000 feet of a school qualify as two predicate controlled substance offense convictions. PSR ¶¶ 25, 26; U.S.S.G. §§ 4A1.2(a)(2), 4B1.2(b). Furthermore, his 1996 conviction for attempted murder qualifies as a predicate crime of violence conviction. PSR ¶ 30; U.S.S.G. § 4B1.2(a). Thus, Brown has three predicate convictions and it is unnecessary to determine whether Brown's 2003 conviction for fourth degree conspiracy to violate narcotic laws qualifies as a controlled substance offense. See PSR ¶ 32; cf. U.S.S.G. § 4B1.2(b); N.J. Stat. Ann. §§ 2C:5-2, :5-4, :43-6 (2003); United States v. Washington, 629 F.3d 403, 413–14 (4th Cir. 2011); United States v. Day, 465 F.3d 1262, 1266–67 (11th Cir. 2006); United States v. Ward, 171 F.3d 188, 191–93 (4th Cir. 1999). Therefore, the advisory guideline range is 360 months' to life imprisonment. PSR ¶ 75.

II.

The Supreme Court has described the process for imposing a sentence under the now-advisory sentencing guidelines:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the

5

starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

Gall v. United States, 552 U.S. 38, 49–50 (2007) (footnote and citations omitted); see Pepper v. United States, 131 S. Ct. 1229, 1241–45 (2011); Nelson v. United States, 129 S. Ct. 890, 891–92 (2009) (per curiam); Spears v. United States, 555 U.S. 261, 263–64 (2009) (per curiam); Kimbrough v. United States, 552 U.S. 85, 101 (2007) ("[W]hile the statute still requires a court to give respectful consideration to the Guidelines, [United States v.] Booker[2] permits the court to tailor the sentence in light of other statutory concerns as well." (citations & quotation omitted)); Rita v. United States, 551 U.S. 338, 357–58 (2007); United States v. Diosdado-Star, 630 F.3d 359, 363–66 (4th Cir. 2011); United States v. Carter, 564 F.3d 325, 328–30 (4th Cir. 2009); United States v. Evans, 526 F.3d 155, 160–61 (4th Cir. 2008); United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The court recognizes its duty within this framework to "make an individualized assessment based on the facts presented," Gall, 552 U.S. at 50, and to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); see, e.g., Spears, 555 U.S. at 263–64; Kimbrough, 552 U.S. at 100–01; Carter, 564 F.3d at 328–30.

III.

First, the court must calculate the applicable advisory guideline sentencing range. See, e.g., Gall, 552 U.S. at 49–50. As mentioned, the applicable advisory guideline sentencing range is 360 months' to life imprisonment. The court next must determine whether a sentence within the

---

[2]543 U.S. 220 (2005).

6

applicable advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. See, e.g., Gall, 552 U.S. at 49–50; Pauley, 511 F.3d at 473. In doing so, the court may look to whether a departure is appropriate based on the sentencing guidelines or relevant case law. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. The court also must consider whether the factors set forth in 18 U.S.C. § 3553(a) warrant a variance. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. Provided that "at least one rationale is justified and reasonable," "the method of deviation from the Guidelines range . . . is irrelevant." Diosdado-Star, 630 F.3d at 365–66.

A.

A court may depart upwardly under section 4A1.3 to a de facto career offender range. "The district court may sentence a defendant as a de facto career offender when he has committed two crimes that would qualify as predicate crimes for career offender status, but for some reason cannot be counted[, such as when ] two of the defendant's prior crimes . . . are consolidated for sentencing purposes and thus do not constitute two separate predicate offenses." United States v. Lawrence, 349 F.3d 724, 729 (4th Cir. 2003) (citation and quotation omitted); United States v. Cash, 983 F.2d 558, 562–63 (4th Cir. 1992). Here, Brown was convicted of possession with intent to distribute for possessing cocaine on January 20, 1996. PSR ¶ 31. The offense is not scored only because of the date of sentencing coincides with the date of Brown's sentencing for attempted murder and armed robbery. See PSR ¶¶ 29–31; U.S.S.G. § 4A1.2(a)(2). Thus, even if the court erred by classifying Brown as a career offender, Brown's criminal history supports a departure to de facto career offender status. PSR ¶¶ 25, 26, 29, 30, 31, 37. Therefore, under Lawrence, the court announces an alternative upward departure to the de facto career offender range.

7

Alternatively, even if the court did not treat Brown as a de facto career offender, it would still upwardly depart under both section 2K2.4, application note 4, and section 4A1.3. As for section 2K2.4, the commentary states that

> [i]n a few cases in which the defendant is determined not to be a career offender, the offense level for the underlying offense . . . may result in a guideline range that, when combined with the mandatory consecutive sentence under [18 U.S.C. § 924(c) ] . . . produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under . . . § 924(c). . . . In such a case, an upward departure may be warranted so that the conviction under . . . § 924(c) . . . does not result in a decrease in the total punishment. An upward departure under this paragraph shall not exceed the maximum of the guideline range that would have resulted had there not been a count of conviction under . . . § 924(c).

U.S.S.G. § 2K2.4, cmt. n.4. Here, without a career offender determination, Brown's "total maximum penalty" for purposes of an advisory guidelines calculation is 271 to 308 months. However, if Brown had not been convicted of violating section 924(c), his offense level computation for counts one and two would have included a seven-level enhancement for the discharge of a firearm. PSR ¶ 61; see U.S.S.G. § 2B3.1(b)(2)(A). Those additional seven offense levels would result in a total offense level of 36 and an advisory guideline range of 324 to 405 months. This range is higher than Brown's "total maximum penalty" and therefore an upward departure is warranted to prevent the section 924(c) conviction from decreasing Brown's total punishment. U.S.S.G. § 2K2.4, cmt. n.4.

Alternatively, an upward departure may be warranted when a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that defendant will commit other crimes. See U.S.S.G. §§ 2K2.4, cmt. n.2(B), 4A1.3(a)(1); United States v. Myers, 589 F.3d 117, 125 (4th Cir. 2009); Lawrence, 349 F.3d at 726–27; see United States v. Johnson, 249 F. App'x 713, 726 (10th Cir. 2007) (unpublished) (stating

8

that "nothing in [U.S.S.G. § 2K2.4] Application Note 4 . . . prohibit[s] the district court from applying a second upward departure"). Here, the court determines that, if the court erred by classifying Brown as a career offender or erred by departing to de facto career offender status, an upward departure under section 4A1.3(a) is appropriate. Brown is 36 years old and has a deeply troubling history of violent criminal conduct. Brown has spent most of his adult life committing serious, violent crimes, resulting in 15 convictions. See PSR ¶¶ 23–37. Furthermore, Brown's criminal history is replete with examples of leniency, see, e.g., PSR ¶¶ 23–27, 32–34, 36, including a lack of meaningful punishment for repeated violations of probation or parole. See, e.g., id. ¶¶ 23–25, 28–32, 35. In light of the entire record, the court finds that Brown's record, spanning nearly 20 years, reflects recidivism and a near certain likelihood of future recidivism. See U.S.S.G. § 4A1.3(a)(1). Thus, the court finds that criminal history category VI woefully fails to account for the nature and seriousness of Brown's criminal history or the likelihood that he will commit other serious, violent crimes. A court that elects to depart upwardly under section 4A1.3 must move horizontally across successive criminal history categories up to category VI, and, if category VI is inadequate, is to then vertically traverse to successively higher offense levels. See, e.g., U.S.S.G. § 4A1.3(a)(4); United States v. Dalton, 477 F.3d 195, 200 (4th Cir. 2007). Accordingly, the court moves vertically down the offense level column from offense level 36. See, e.g., Dalton, 477 F.3d at 200. In doing so, the court moves from offense level 36 to offense level 37 and finds that it adequately reflects the nature, number, and seriousness of Brown's prior convictions and the likelihood of Brown committing other serious crimes. Coupling criminal history category VI and offense level 37 yields an alternative advisory guideline sentencing range of 360 months to life imprisonment. See U.S.S.G. § 5A (sent'g table).

B.

The court next considers whether the resulting advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a). The court recognizes its obligation to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a); see, e.g., Spears, 555 U.S. at 264–68; Gall, 552 U.S. at 49–50. These purposes include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). Of course, the court has considered, as appropriate, all of the factors set forth in 18 U.S.C. § 3553(a), and the arguments of counsel. The court must select a sentence in light of the section 3553(a) factors, and must adequately explain the rationale for its sentence. See Spears, 555 U.S. at 264–68; Gall, 552 U.S. at 46, 50; Carter, 564 F.3d at 328; Evans, 526 F.3d at 164–65.

Brown stands before the court at 36 years of age with a long, profound, and disturbing criminal history. Notwithstanding defense counsel's effort to minimize Brown's criminal conduct in this case and during his life, defendant's actions in this case are very serious and harm the community. Street gangs like E-40 cannot function without cold-blooded people like Brown. Furthermore, megalomaniacs like Hawkins need men like Brown to engage in the strong-arm tactics necessary to create their auras of power. See PSR ¶ 18. Moreover, instead of rejecting a criminal lifestyle following 14 convictions and repeated incarceration, Brown engaged in new felonious, violent criminal conduct. Specifically, while on probation, Brown stabbed a man on April 20, 2008, and one month later, shot a man in the chest. PSR ¶¶ 12, 35, 37. Of course, violating probation or conditions of release is nothing new for Brown. In addition, Brown has very little employment

10

history. Both specific and general deterrence are critical in this case, particularly given Brown's serious offense behavior, extensive violent criminal record, lack of respect for the law, poor performance on supervision, and near certain likelihood of violent recidivism. Society has long needed protection from Brown and today will receive it.

The court has considered defense counsel's arguments and finds that defendant has no intention to ever change his violent criminal behavior. Cf. Spears, 555 U.S. at 266–68 (emphasizing advisory nature of guidelines and authority of district court to sentence outside the advisory guideline range where a district court grounds the sentence in the section 3553(a) factors); Gall, 552 U.S. at 51–52 (noting the institutional advantage that district courts have over appellate courts in assessing credibility and gaining insight needed to find facts and adjudge their import under section 3553(a)). Brown's violent record over a prolonged period of time, coupled with his conduct in this case, destroys defense counsel's request for leniency. As for Brown, the court does not believe that he is credible and does not believe that he has any intention of changing his violent, criminal lifestyle. The court also rejects Brown's contention that his criminal behavior was "done by [his] circumstances, not by [his] choice." Brown alone is responsible for his violent, criminal acts. Brown also points to having recently obtained a GED with high test scores. However, Brown's academic aptitude fails to counteract the near certainty that he will return to a violent, criminal lifestyle if released. The time for second, third, fourth, or fifth chances has long past.

The court has considered and rejects Brown's request for a sentence of 240 months. Brown makes this argument based on Hawkins's 240-month sentence and claims that, absent a 240-month sentence, the court will create an unwarranted sentence disparity. A court must "avoid unwarranted sentence disparities among defendants with similar records <u>who have been found guilty of similar conduct</u>." 18 U.S.C. § 3553(a)(6) (emphasis added). Hawkins and Brown both have incredibly

11

violent criminal histories. However, Brown shot a man during this robbery and Hawkins did not. Brown obstructed justice by intimidating a co-conspirator and Hawkins did not. Finally, Hawkins admitted his criminal conduct, pleaded guilty to count one, and therefore obtained a substantial benefit: a 240-month cap on his sentence. Without his plea agreement, Hawkins's advisory guideline range would have been 360 months to life. In contrast, Brown was convicted of three counts. Therefore, Brown was found guilty of substantially more criminal conduct than Hawkins. Thus, the court finds that a disparity is warranted.

The court shall impose a sentence that reflects the seriousness of the offenses, promotes respect for the law, provides just punishment for the offenses, and affords adequate deterrence to criminal conduct (both to Brown personally and others like him). The sentence also will provide the public much needed protection from further crimes of Brown. Thus, for the reasons explained above and in open court, defendant Brown is hereby sentenced to 240 months' imprisonment on count one, 240 months' imprisonment on count two to be served consecutively, and life on count three to be served consecutively.

Alternatively, the court notes that it would impose the same sentence as a variance sentence even if it has incorrectly calculated the advisory guideline sentencing range or incorrectly departed. See, e.g., United States v. Savillon-Matute, 636 F.3d 119, 123–24 (4th Cir. 2011); United States v. Keene, 470 F.3d 1347, 1348–50 (11th Cir. 2006); United States v. Alvarado Perez, 609 F.3d 609, 619 (4th Cir. 2010) (Shedd, J. concurring); see also Grubbs, 585 F.3d at 804; Evans, 526 F.3d at 164–66; United States v. McClung, 483 F.3d 273, 277 (4th Cir. 2007). For the reasons explained above and in open court concerning section 3553(a) and the record in this case, the court believes that the sentence announced is the sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); cf., e.g., Spears,

555 U.S. at 264–68; Evans, 526 F.3d at 162–66 (affirming variance sentence of 125 months, even though advisory guideline range before upward departure was 24 to 30 months); United States v. Vowell, 516 F.3d 503, 511–13 (6th Cir. 2008) (affirming variance sentence of 780 months, even though advisory guideline range was 188 to 235 months); United States v. Pinson, 542 F.3d 822, 836–38 (10th Cir. 2008) (affirming variance sentence of 240 months, even though advisory guideline range was 84 to 105 months). Again, the court notes that Brown's violent conduct, both in this case and his criminal history generally, is serious, that he is a recidivist's recidivist, and that society needs protection from him. Furthermore, Brown has repeatedly demonstrated a lack of respect for the law despite repeated leniency. See United States v. Turcios-Flores, 368 F. App'x 397, 398–99 (4th Cir. 2010) (per curiam) (unpublished). The court announced the balance of defendant's sentence in open court and also described defendant's appellate rights.

IV.

The court has imposed defendant's sentence for the reasons discussed herein and the reasons discussed in open court, which are incorporated by reference. The order is intended to provide a statement of reasons for defendant's sentence, and does not alter or amend the court's judgment announced in open court.

SO ORDERED. This **24** day of August 2011.

JAMES C. DEVER III
United States District Judge

13

Case 5:10-cr-00322-D    Document 147    Filed 08/24/11    Page 13 of 13